UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SYDNEY PETITE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-2056** |
| **ROBERT C. LOWE ET AL** | **SECTION "B"(5)** |

## ORDER AND REASONS

Before the Court are defendants Jeffrey M. Hoffman, Hoffman, Nguyen & Kuehl, LLC, Lowe Stein, LLC and Robert C. Lowe's joint motion for summary judgment (Rec. Doc. 45), plaintiff Sydney Petite's response in opposition (Rec. Doc. 47), and defendant's reply in support (Rec. Doc. 50). Additionally, on July 3, 2025 both parties filed a joint motion to continue the pretrial conference (Rec. Doc. 53). For the following reasons,

**IT IS ORDERED** that defendants' joint motion for summary judgment (Rec. Doc. 45) be **GRANTED** for reasons *infra*.

**IT IS FURTHER ORDERED** that the parties' joint motion to continue the pretrial conference (Rec. Doc. 53) is **DISMISSED** as **MOOT**.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This is a 28 U.S.C. § 1332 diversity jurisdiction claim filed by plaintiff Sydney Petite. Rec. Doc. 1 at 2. This legal malpractice claim derives from Robert C. Lowe, Jeffrey Hoffman, and each attorney's respective firm's work on the plaintiff's divorce. In her petition, plaintiff explains that throughout the duration of her marriage, her then husband Hinds subjected her to violent physical abuse. Rec. Doc. 1 at 3 ¶ 9. After years of marriage, plaintiff filed a petition for divorce and an amended petition for divorce, respectively in August of 2018 and June of 2020. *Id.* at 3 ¶ 10. In both petitions, plaintiff highlighted details of her ex-husband's criminal domestic abuse and sought sole custody of her three children under the provisions of the Louisiana Post-Seperation Family

1

Violence Relief Act. *Id.* Plaintiff alleges that due to the abuse she incurred, she had a cause of action in tort against Hinds for compensatory and exemplary or punitive damages under Louisiana law, specifically article 2315.8. *Id.* at 3 ¶ 12. Further, plaintiff also claims that because of the crimes committed against her, the tort action would have likely resulted in a settlement of three million ($3,000,000.00) dollars. However, plaintiff states her cause of action was limited to a two-year prescriptive period which began when the divorce was granted. *Id.* at 4 ¶ 14.

Regarding this lawsuit, plaintiff explains that she retained attorneys Robert C. Lowe and Jeffrey M. Hoffman to represent her in the divorce. *Id.* at 4 ¶ 15. Both defendants continuously represented plaintiff from March 2020 through May of 2024. *Id.* at 3 ¶ 11; *Id.* at 4 ¶ 15. Both defendants knew of the abuse suffered by the plaintiff and even utilized this history when filing pleadings and submitting legal argument on the plaintiff's behalf in the divorce proceedings. *Id.* at 5 ¶ 17. Nonetheless per the plaintiff, at no time during their representation did either defendant inform Petite of her rights to bring a tort action against her ex-husband. *Id.* at 5 ¶ 17.

Plaintiff filed this complaint per 28 U.S.C. § 1332 diversity jurisdiction. *See* Rec. Doc. 1. On October 18, 2024, defendants then filed its motion to dismiss for failure to state a claim. Rec. Doc. 7. That motion was denied. Rec Doc. 42. Now the defendants have filed a joint motion for summary judgment. Rec. Doc. 45. Plaintiffs oppose this motion. Rec. Doc. 47.

**LAW AND ANALYSIS**

  a. **Motion for Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). A genuine issue of fact exists only "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, even if not accompanied by an affidavit, material in support or opposition of a motion for summary judgment may be considered as long as it is "*capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)). In determining whether the movant is entitled to summary judgment, courts view all facts and evidence in the light most favorable to the non-moving party, but "refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008).

"[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment, rather competent evidence, such as affidavits or depositions must be put forth to buttress their claim. *Bargher v. White*, 928 F.3d 439, 444–45 (5th Cir. 2019); *Donaghey v. Ocean Dilling & Expl. Co.*, 974 F.2d 646, 649 (5th Cir. 1992). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law. *Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir. 2002).

### b. Jurisdiction and Application of Louisiana Substantive Law

The plaintiff is pursuing a malpractice claim rooted in state law between parties with diverse citizenship. It is a long-recognized principle that federal courts sitting in diversity cases[, such as this one], 'apply state substantive law and federal procedural law'." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965); *Iberiabank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 344 (5th Cir. 2020)). Thus, Louisiana substantive law applies.

### c. Louisiana Legal Malpractice

A legal malpractice claim in Louisiana is a "professional negligence claim." *Tijerino v. Miller*, No. CV 23-7391, 2025 WL 1101468 (E.D. La. Apr. 14, 2025). Therefore, in order to recover, the plaintiff must establish all the elements of negligence. *Id.* Thus, Petite must show evidence sufficient to prove (1) the existence of an attorney-client relationship; (2) the attorney was negligent in his representation of his client; and (3) the negligence caused the plaintiff's loss. *See MB Indus., L.L.C. v. CNA Ins. Co.*, 2011-0303 (La. 10/25/11), 74 So. 3d 1173, 1184 (citing *Teague v. St. Paul Fire and Marine Ins. Co.*, 07-1384 (La. 2/1/08), 974 So. 2d 1266, 1272); *see also Costello v. Hardy*, 03-1146, p. 9 (La. 1/21/04), 864 So.2d 129, 138).

### a. *Defendants' Duty*

The instant motion states plaintiff is unable to prove the second element of legal malpractice, as she has provided no expert testimony to rebut defendants' expert's opinion relative to her attorneys' adherence to standard or care. Assuming arguendo that defendants are correct, and the plaintiff cannot prove all the elements of legal malpractice, then defendants would be entitled to a judgment as a matter of law. Thus, to prevail on the merits, Petite has the burden of proving that the defendant failed to exercise at least "that degree of care, skill, and diligence, which

is exercised by prudent practicing attorneys in the locality." *See, e.g.*, *MB Indus., LLC*, 74 So. 3d at 1184 (quoting *Ramp v. St. Paul Fire and Marine Ins. Co.*, 269 So. 2d 239, 244 (1972)); *see also*, *Brassette v. Exnicios*, 2011-1439 (La.App. 1 Cir. 5/14/12), 92 So. 3d 1077, *writ denied*, 2012-1583 (La. 11/9/12), 100 So. 3d 831). Specifically, Petite must prove that defendants' failure to inform her of the effects of the 2019 Consent Judgment, the possible bar created by *res judicata* on her potential tort claim, and the alleged malpractice of her previous attorney was "obvious" negligence.

The Scheduling Order provided until April 11, 2025, for plaintiff's expert disclosures, as defined by Federal Rules of Civil Procedure 26(a)(2)(B). Rec. Doc. 16 at 2. As this deadline has passed, and plaintiff has not provided any expert testimony, the Court will review the evidence as is. Further, as stated in this Court's previous Order, this Court is not inclined to allow any untimely additions of experts. Rec. Doc. 42; *Geiserman v. MacDonald*, 893 F.2d 787 (5th Cir. 1990) (holding that a district court's decisions to exclude expert witness testimony in legal malpractice case based on plaintiff's failure to designate experts timely was not abuse of discretion). Moreover, defendants are correct, in that, due to plaintiff's decision not to provide an expert, their defense expert's opinion remains unrebutted.[1]

In Louisiana courts plaintiffs regularly retain expert witnesses to both establish the standard of care or duty and breach elements of a legal malpractice claim. *See MB Indus., LLC*, 74 So. 3d at 1184; *Bradford v. Gauthier, Houghtaling & Williams, LLP*, No. CIV.A. 13-2407, 2014 WL 4425743 (E.D. La. Sept. 8, 2014), *aff'd sub nom. Bradford v. L. Firm of Gauthier*, 633 F.App'x

---

[1] In a separate Order, this Court denied the plaintiff's motion *in* limine. The expert opinion testimony, at issue, was limited to describing the standard of care required of an attorney in similar circumstances and whether the standard of care was met or not.

276 (5th Cir. 2016). One exception where expert testimony is not required to establish a standard of care occurs when "the alleged legal malpractice is 'obvious' or the defendant attorney committed 'gross error.'" *MB Indus., LLC*, 74 So. 3d at 1185. As the plaintiff has not filed any expert testimony, the resolution of the instant motion turns on whether defendants' alleged negligent conduct rises to this level of obviousness. Examples of when Louisiana courts have deemed acts to be sufficiently obvious such that expert testimony is not required, include: "delivering a box of the client's document production to opposing counsel without first making copies; failing to appear and defend the client at a hearing; failing to investigate the date of an accident and allowing the claim to prescribe." *Bradford*, No. 13-2407 at *2 (citing *Frisard v. State Farm Fire & Cas. Co.*, 979 So. 2d 494, 498 (La.Ct.App. 1st Cir. 2007); *Watkins v. Sheppard*, 278 So. 2d 890, 892 (La.Ct.App. 1st Cir. 1973); *MB Indus., LLC*, 74 So. 3d at 1185.). Whereas situations that call for the "'exercise of professional judgment' require expert testimony in order for a jury to glean whether they fall below the standard of care of attorneys in the relevant locality." *Bradford*, No. 13-2407 at *2 (citing *Houllion v. Powers & Nass, et al.*, 530 So. 2d 680, 683 (La.Ct.App. 4th Cir. 1988); *Crescent City Prop. Redevelopment Ass'n, LLC v. Hardy*, 2011-1292 (La.App. 4 Cir. 4/18/12), 89 So. 3d 1270, *writ denied* 2012-1429 (La. 10/8/12), 98 So. 3d 859). Situations which are deemed to require expert testimony, "as they are too ambiguous to be easily recognized as malpractice by a lay jury, include: failing to timely file exceptions; failing to file a motion for summary judgment; failing to object to discovery pleadings; advising a client to sign a compromise; failing to seek a hearing; failing to include certain additional claims in the petition; withdrawing for the case only a few months before trial; missing deadlines to add defendants or request a jury trial; failing to ask certain questions of witnesses at trial; failing to call certain

witnesses to testify; and failing to obtain an expert witness." *Bradford*, No. 13-2407 at *2 (citations omitted).

Here, plaintiff is mainly focused on two allegations of malpractice. First, plaintiff asserts that the defendants had a duty to explain the effect of the 2019 Consent Judgment and its effect on plaintiff's "financially valuable cause of action." Rec. Doc. 1 at 6¶18. Second, plaintiff asserts that defendants breached their duty to inform her of her malpractice claims against her previous attorney, Jesse Lagarde. *See* Rec. Doc. 37.

### b. Failure to inform plaintiff of the effect of the 2019 Consent Judgment and its effect on plaintiff's "financially valuable cause of action"

To find an attorney was negligent in his representation of a client, a plaintiff must first establish that an attorney-client relationship existed. *See* Costello v Hardy, 2003-1146 (La. 1/21/04), 864 So. 2d 129. In the matter of legal malpractice, "duty is defined by the attorney-client relationship." *See SCB Diversified Mun. Portfolio v Crews & Assocs.*, No. CIV.A 09-7251, 2012 WL 13708 (E.D. La. Jan. 4, 2012) (quoting *Hartz v. Farrugia*, No. CIV.A. 06-3164, 2009 WL 901767, at *3 (E.D. La. Mar. 31, 2009), *aff'd*, 360 F.App'x 541 (5th Cir. 2010)). As these relationships are contractual, an attorney's agreement "to represent a client in connection with a specific legal matter does not imply authorization to handle all others, nor does the agreement or consent of the attorney to represent a[] client in a particular matter create an attorney-client relationship in regards to other business or affairs of the client." *Hartz*, No. CIV. A. 06-3164, 2009 WL 901767 (E.D. La. Mar. 31, 2009), *aff'd*, 360 F.App'x 541 (5th Cir. 2010) (quoting *Delta Equip.& Constr. Co. v. Royal Indem. Co.*, 186 So. 2d 454, 458 (La. App. 1 Cir. 1966)).

In the instant matter, it is undisputed that the defendants had an attorney-client relationship with plaintiff from being retained on February 20, 2020, with Hoffman continuing to represent Petite, even after he left Lowe Stein in March of 2021. *See* Rec. Doc. 45-14; Rec. Doc. 45-19 at

11. Further, defendants admit to representing plaintiff through May of 2024. Rec. Docs. 45-15 and 45-17. Therefore, defendants could not be involved in the negotiations or execution of the 2019 Consent Judgment. *See* Rec. Doc. 45-14. However, the timing of this Judgment and subsequent relationship does not automatically bar plaintiff's claim. It does, however, place the onus on plaintiff to establish why the defendants would be responsible for explaining to her the previously consented to judgment and its effects.

Considering the plaintiff's burden, it must be assumed that this relationship would have been established. Unfortunately, the record seems to be void of evidence proving defendants were contracted to review previously settled matters in the plaintiff's divorce proceedings. Defendants do, however, provide a letter dated Wednesday, January 8, 2020, in which Petite explains her reasons for attempting to retain the defendants counsel. *See* Rec. Doc. 45-12 at 5-7. Specifically, Petite asserts a desire to retain the defendants for upcoming divorce proceedings. *Id.* Plaintiff's email was seemingly sent to provide an update on her case and express ongoing issues with her ex-husband. *Id.* (emphasis on document's title "Sydney Petite Divorce/Custody Dispute – Attorney Needed).

While the email's goal was to "give [the defendants] a quick synopsis," it also reveals pertinent information to the resolution of the instant motion. *Id.* Specifically, Petite asserts that she was seeking to retain the services of the defendants because she was concerned her previous attorney "couldn't match" her ex-husband's new attorney's "aggressive[ness]" in the custody and visitation discussions. Rec. Doc. 45-12 at 5-6. In fact, Petite states in her letter "[h]e couldn't fight in the negotiation[,] and it physically showed." Rec. Doc. 45-12 at 5-6. Petite continued, "I need someone who can advocate for my children and for me and fight for this." Rec. Doc. 45-12 at 6.

Of note, Petite also informs the defendants of her previously granted "judgments set [that] gave [her] sole custody of the boys with supervised visitation." Rec. Doc. 45-12 at 5.

Through this letter it is clear that Petite was looking for representation to end the divorce, not reopen already negotiated aspects of the litigation. Furthermore, while the letter mainly focuses on plaintiff's financial concerns, she does speak of previously being convinced to drop her criminal case against her ex-husband, specifically she states, "kept holding finances over my head and ultimately **convinced me** to agree to tell the DA prosecutor **that I wouldn't testify against him**." *Id.* (Emphasis added). Defendants have also included handwritten notes in their memorandum, but it is unclear when these notes were taken, and due to the handwriting, the notes are not entirely legible. *See* Rec. Doc. 45-13.

Based on the record, including the plaintiff's affidavit, there is no showing that defendants were hired to assess or needed to adjust the 2019 Consent Judgment. *See.* Rec. Doc. 45-12. Moreover, until this lawsuit, plaintiff had no issue with the benefits garnered by the 2019 Consent Judgment. In her January letters plaintiff asserts without equivocation that the "judgement from 2018[2] allowed for "sole custody of the boys with supervised visitation" and made "[her] ex [ ] responsible for all of [her] attorney fees (due to the LA state law provisions with **abuse-based divorce**)." Rec. Doc. 45-12 at 3-5. (Emphasis added). Unsurprisingly, as plaintiff does not raise issue with the benefits garnered by this compromise in either letter, it is completely understandable that she would not ask her newly retained attorneys to waste time and fees reviewing and advising on this 2019 Consent Judgment. Because there is no proof that defendants were ever retained to

---

[2] Neither party addresses plaintiff's reference to a judgment from 2018. However, the record does reflect that after plaintiff's petition for divorce, the parties met on September 19, 2018, regarding Petite's petitions for protection from abuse pursuant to La. R.S. 46:2136 and R.S. 9:362. Rec. Doc. 45-9 at 1¶2.This meeting resulted in the stipulation Petite refers to awarding her sole custody of her minor children, subject to supervised visitation by the father, and ancillary stipulations agreed upon between the parties. *Id.* The Judgment was signed by the Court on February 19, 2019. *Id.*

9

review the plaintiff's prior divorce agreements nor is there evidence of obvious injustices with the said judgment that would have alerted defendants to a need to investigate further, there is no proven client-attorney relationship regarding this claim. Further, because she cannot prove an attorney-client relationship existed, she also fails to prove there was a duty owed. Without a relationship or a duty owed, Petite is unable to show "obvious" negligence for this claim.[3]

### c. *Failure to inform plaintiff of a potential malpractice claim against previous attorney*

Based on the record, Petite claimed ignorance of her rights to pursue a malpractice claim against Lagarde, and therefore she did not request that the defendants pursue these claims. Rec. Doc. 27-1; Rec. Doc. 45-2 at 13. This admission, again, exhumes the question of whether the plaintiff can even prove an attorney-client relationship existed for this claim. Defendants argue that per plaintiff's logic, upon retainer, they would have had to engage in an unprompted, unilateral investigation into a potential malpractice claim to adhere to their duty. *See* Rec. Doc. 45-2 at 14. As Petite has offered no expert evidence to prove this is the standard of care, the question that arises is whether Petite can establish that her "standard of care" qualifies as the "degree of care, skill, and diligence which is exercised by prudent practicing attorneys in [this] locality. *MB Indus., LLC*, 74 So. 3d at 1184 (quoting *Ramp*, 269 So. 2d at 244).

Defendants' expert opines that Judge Zainey's holding in *Hartz v. Farrugia* parallels Petite's claims and suggests the scope of defendants' representation limits them from relitigating

---

[3] While this decision is made for other reasons, in denying a previously filed Rule 12(b)(6) dismissal motion, we explained the difficulty here of assuming a physically abused person was not aware of a right to sue their attacker for injuries. Rec. Doc. 42 at 11, fn 1. Plaintiff alleges that counsels' failure to advise her of a right to sue an abusive husband constitutes an "obvious" basis for asserting legal malpractice. However, she acknowledges her refusal to testify against her abusive husband for his continuous criminal misconduct against her. *See* Rec. Doc. 45. There is no indication that plaintiff is mentally deficient in some medical or educational context. The general rule "ignorance of the law is no excuse" really means that people can't defend their actions or inactions by claiming they didn't know the law or the right to sue for injuries caused by being physically attacked.

matters previously agreed to by plaintiffs and her ex-husband and the subject of a Consent Judgment. No. CIV. A. 06-3164, 2009 WL 901767 (E.D. La. Mar. 31, 2009), *aff'd*, 360 F.App'x 541 (5th Cir. 2010). In *Hartz*, the plaintiff was negotiating an employment dispute when she decided to replace her original attorney with the defendant attorneys. *Id.* at *4-*5. Like the instant matter, the defendant attorneys in *Hartz* were retained to assist with one aspect of the plaintiff's case. *Id.* In his holding, Judge Zainey stated "the particular facts surrounding Hartz's engagement of the [ ] Defendants establishes that they had no duty to inform her of any omissions regarding [her previous attorney's] representation." *Id.* at * 5. The holding continues "there is nothing in the record that even remotely suggests that the Chopin Defendants agreed to such a broad engagement . . . to the contrary, the record suggests a very narrow rendering of services." *Id.*

Further, plaintiff's reliance on *Haydel v. Mollere* is a non sequitur, as the standard in *Haydel* does not support a conclusive standard in the instant matter. Rec. Doc. 47 at 22.  There, the attorney-client relationship resembled that of Petite and Attorney Lagarde. Further, during the divorce proceedings, in *Haydel*, the defendant attorney Mollere was specifically asked to advise and represent the plaintiff in a tort claim against her "violent husband." *Haydel v. Mollere*, No. 24-CA-566, 2025 WL 1174595 (La. App. 5 Cir. Apr. 23, 2025).  It was then that Mollere negligently counseled Haydel to wait until after her divorce proceeding to file the tort claim. *Id.* This negligent advice was contrary to Texas law, and later resulted in barring Haydel's tort claim because of *res judicata*. While this case would be helpful in a claim against her previous attorney, Lagarde, for alleged legal malpractice, it falls short against the instant defendants.

Failure to unilaterally investigate a potential malpractice claim, unprompted, is not obviously negligent such that plaintiff is excused from offering expert testimony. The instant

11

matter is not a situation like *Haydel*, as the defendants' conduct is not so obviously negligent that a "lay person would recognize it as falling beneath the necessary standard of care." *MB Indus., LLC*, 74 So. 3d at 1184 (quoting *Ramp*, 269 So. 2d AT 244). Nonetheless, no expert testimony was provided by the plaintiff. Accordingly, plaintiff has failed to establish an essential element of her claim, thus her failure to retain an expert is fatal to this allegation, as well.

### d. Loss Caused by Alleged Negligence

The third element of legal malpractice requires a plaintiff to show evidence that the defendant's negligence caused the plaintiff a loss. *MB Indus.*, 11-0303, p.15, 74 So.3d at 1187. To prove this element, plaintiff must prove that the attorney's performance would have prevented the loss. *Henry v. Ahern*, 2021-0438, p.15 (La. App. 4 Cir. 2/9/22), 335 So. 3d 871 (citing *Holland v. Hornyak*, 07-394 (La. App. 5 Cir. 11/27/07), 971 So. 2d 1127, 1231). If a loss would have resulted irrespective of alleged negligence, then the plaintiff's claim fails. *Id.* Meaning if the attorney's client is in the same legal position before and after the attorney is removed from the representation, there can be no legal malpractice.

Here, the question of whether a loss was caused is now irrelevant. The claims in the instant matter are not cognizable. The lack of expert testimony is fatal to Petite's claims, as she is unable to establish an essential element of legal malpractice, negligence by the defendants. Accordingly, defendants are entitled to a judgment as a matter of law.

New Orleans, Louisiana, this 8th day of July, 2025

_____
SENIOR UNITED STATES DISTRICT JUDGE